**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | | |
|---|---|---|
| W2 KAUAI, LLC, FRED RICKMAN, and STEVE BARDWELL, | § § § | |
| *Plaintiffs,* | § § | CIVIL ACTION NO. 1:20-CV-01430 |
| v. | § § | JURY TRIAL DEMANDED |
| LIFESTYLE ASSET MANAGEMENT, LLC, | § § § | |
| *Defendant.* | § § § § § § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Plaintiffs W2 Kauai, LLC, Steve Bardwell, and Fred Rickman (collectively, "Plaintiffs") file this Original Complaint against Defendant Lifestyle Asset Management, LLC ("Manager" or "Defendant"), and in support thereof show the following:

**INTRODUCTION**

1. Plaintiffs are equity owners in a limited liability company that owns a luxury investment property managed by the Defendant-Manager. For over six months now, the Manager has grossly failed to perform its fundamental management duties under the Operating Agreement and Colorado law, including by failing to provide information regarding the company or its property despite repeated requests from Plaintiffs, failing to collect shared expenses owed by other equity owners, failing to timely pay expenses and taxes owed by the company, failing to honor Plaintiffs' redemption rights under the Operating Agreement, and allowing significant debts and

taxes to accrue on the company's valuable property. Plaintiffs, therefore, bring this action to prevent further irreparable harm to their interests in the company and its valuable investment property either through the removal of the Manager as the managing member of the company or other relief compelling the Manager to perform its basic management duties and responsibilities and holding the Manager accountable for the same.

## PARTIES

2. Plaintiff W2 Kauai, LLC is an Oklahoma limited liability company with a principal place of business in Oklahoma. Its members are all residents of Oklahoma or Texas.

3. Plaintiff Steve Bardwell is a natural person and resident of Texas.

4. Plaintiff Fred Rickman is a natural person and resident of North Carolina.

5. Defendant Lifestyle Asset Management, LLC is a Colorado limited liability company and its principal place of business is 155 E. Boardwalk Dr., Suite 473, Fort Collins, Colorado, 80525. On information and belief, its members are all residents of Colorado. It may be served through its registered agent, Lifestyle Asset Group, LLC, at 155 E. Boardwalk Dr., Suite 473, Fort Collins, Colorado, 80525.

## JURISDICTION & VENUE

6. The Court has diversity jurisdiction over this matter pursuant 28 U.S.C § 1332, because Plaintiffs and Defendants are citizens of different States and the amount in controversy in this action exceeds $75,000.

7. The Court also has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Plaintiffs' declaratory judgment claim arise under federal law.

ase 1:20-cv-01430-NRN Document 1 Filed 05/19/20 USDC Colorado Page 3 of 20

8. To the extent the Court does not have subject matter jurisdiction over one or more of Plaintiffs' claims, the Court has supplemental jurisdiction over such claims pursuant to 28 U.S.C. §§ 1367(a) and/or (b).

9. The Court has personal jurisdiction over Defendant because Defendant is a resident or citizen of Colorado. The Court also has personal jurisdiction over Defendant because Plaintiffs' claims arise out of or relate to Defendant's minimum contacts with this forum. In addition, Defendant consented to jurisdiction in this forum pursuant to the forum selection clause in the Operating Agreement under which one or more of Plaintiffs' claims arise.

10. Venue is proper in this forum, because Defendant expressly agreed in the Operating Agreement that suit may be brought in this venue. Venue is also proper, because a substantial part of the events giving rise to Plaintiffs' claims occurred in this venue.

## FACTS

**A. Plaintiffs Are Equity Owner Members in the Company, Which Owns an Investment Property for the Equity Owner Members' Shared Use and Benefit.**

11. The Company is a manager-managed limited liability company, meaning it is managed by a single managing member (the Manager), and its other members (the "Equity Owner Members") are investors who have no management powers or responsibilities.

12. Plaintiffs became Equity Owner Members in the Company pursuant to Subscription Agreements executed with the Company and the Offering Materials provided therewith. In total, Plaintiffs own 20.83% of the membership interests in the Company and invested over $1 million to acquire their interests therein. As further described below, Plaintiffs recently agreed to tender additional capital to the Company to redeem the membership interests of certain other Equity Owner Members, raising their collective ownership of the Company to approximately 75%.

PLAINTIFFS' ORIGINAL COMPLAINT                                                              PAGE 3

Case 1:20-cv-01430-NRN Document 1 Filed 05/19/20 USDC Colorado Page 3 of 20

8. To the extent the Court does not have subject matter jurisdiction over one or more of Plaintiffs' claims, the Court has supplemental jurisdiction over such claims pursuant to 28 U.S.C. §§ 1367(a) and/or (b).

9. The Court has personal jurisdiction over Defendant because Defendant is a resident or citizen of Colorado. The Court also has personal jurisdiction over Defendant because Plaintiffs' claims arise out of or relate to Defendant's minimum contacts with this forum. In addition, Defendant consented to jurisdiction in this forum pursuant to the forum selection clause in the Operating Agreement under which one or more of Plaintiffs' claims arise.

10. Venue is proper in this forum, because Defendant expressly agreed in the Operating Agreement that suit may be brought in this venue. Venue is also proper, because a substantial part of the events giving rise to Plaintiffs' claims occurred in this venue.

## FACTS

**A. Plaintiffs Are Equity Owner Members in the Company, Which Owns an Investment Property for the Equity Owner Members' Shared Use and Benefit.**

11. The Company is a manager-managed limited liability company, meaning it is managed by a single managing member (the Manager), and its other members (the "Equity Owner Members") are investors who have no management powers or responsibilities.

12. Plaintiffs became Equity Owner Members in the Company pursuant to Subscription Agreements executed with the Company and the Offering Materials provided therewith. In total, Plaintiffs own 20.83% of the membership interests in the Company and invested over $1 million to acquire their interests therein. As further described below, Plaintiffs recently agreed to tender additional capital to the Company to redeem the membership interests of certain other Equity Owner Members, raising their collective ownership of the Company to approximately 75%.

13. Defendant Lifestyle Asset Group, LLC (the Manager) is the managing member of the Company and has been since the Company's inception in 2018.

14. The Company was formed to acquire a luxury residence at Timbers Hokuala Kauai Laola #1004, Kauai, Hawaii ("the Property") for the use and benefit of the Equity Owner Members. Similar to a time share, each Equity Owner Member is allocated a certain number of weeks during the year to enjoy exclusive use of the Property. The more equity an Equity Owner Member acquires in the Company, the more weeks that Member is allocated to use the Property during the year.

15. Unlike a time share, however, the Equity Owner Members' substantial investment in the Company affords them certain rights and interests in the Property, which are generally set forth in the Company's Operating Agreement and other governing documents, including a Management Authority Policy and a Reservation Policies and Procedures including preferred selection rights.[1] The Equity Owner Members' rights under these governing documents include, among others, a share of any profits generated from the Manager's rental of the Property to third parties, a share of the proceeds from the sale of the Property, usage and reservation rights, and the right to annual reports and other information concerning the Company. *See generally* Operating Agreement, art. 4; Management Authority ¶ 11.2; Reservation Policies and Procedures.

16. The Operating Agreement also imposes certain obligations on the Equity Owner Members to ensure they proportionately contribute to the success of the Property. Most importantly, each "Equity Owner Member shall pay the Company Quarterly Shared Expenses equal to $1,093.75, for an aggregate fee of $4,375 per year for one (1) equity unit." Operating

---

[1] A true and correct copy of the Operating Agreement is attached hereto as Exhibit A. A true and correct copy of the Management Authority and Reservation Policies and Procedures is attached hereto as Exhibit B.

Agreement ¶ 5.03(a). In the event an Equity Owner Member fails to pay its portion of the Quarterly Shared Expenses, the Operating Agreement provides that such "Equity Owner's rights of travel will be suspended until all amounts then due are paid in full." *Id.* ¶ 5.03(b). In addition:

> If nonpayment of Shared Expenses of the Company…continues for a period of 6 months after the due date, **the additional Equity Owners of the Company shall have 30 days to elect to make additional capital contributions to the Company and the Company shall redeem the membership interests of the defaulting Equity Owner.** The redemption price ("Redemption Price") to be paid by the Company in respect of such Equity Owner Member Interests shall be an amount equal to fifty percent (50%) of the then Unreturned Capital Contribution of such Equity Owner Member.

*Id.* (emphasis added).

17. The Property is located at a private resort and residence club that is managed by a company known as Timbers Resorts ("Timbers"). Timbers generally rents the Property and other residences at the resort to third parties, provides and manages shared amenities at the resort, and issues bills to the Company for ongoing expenses at the Property. Ultimately, however, Timbers is not responsible for managing the Property. Rather, as further discussed below, the Manager is exclusively responsible for managing the Property and protecting Plaintiffs' interests therein.

**B.    The Manager's Duties and Obligations to Plaintiffs and the Company.**

18. Plaintiffs, as Equity Owner Members in the Company, entrust the Manager with "the exclusive right to manage the Company's business." Operating Agreement ¶ 6.01. Given the trust and confidence that Plaintiffs have placed in the Manager to manage their valuable investments, the Manager owes Plaintiffs and the Company various duties and obligations, including without limitation the following.

19. First, the Manager owes various fiduciary duties to Plaintiffs and the Company under Colorado law, including without limitation the duty to account, the duty to provide timely

and accurate information, the duty of care, the duties to act competently and diligently in relation to the Company's business, the duty of loyalty, and the duty to refrain from competing with the Company. *See, e.g.*, C.R.S. §§ 7-80-404 to -408.

20. Second, the Manager is required to bill the Equity Owner Members for their respective Shared Expenses and shall "make every effort to collect the same promptly in accordance with the Operating Agreement." Management Authority ¶ 11.1.

21. Third, the Company's governing documents require the Manager to effectively manage and prevent waste to the Property in a number of ways. For example, the Operating Agreement provides that Manager shall not "encumber, mortgage, or pledge for security the Property of the Company nor any Member's interest in the Company; nor shall Manager have authority to incur debt in the name or for the responsibility of the Company, directly or contingently…." Operating Agreement ¶ 6.01(f). Likewise, the Manager must pay all property taxes and expenses associated with the Property and "shall cause the preparation and timely filing of all tax returns required to be filed by the Company…." *Id.* ¶¶ 6.02(b), (i), (l), 7.08. The Manager also "shall maintain the [Property] and the furnishings therein in a first-class manner and direct, supervise and order to be done all things reasonably necessary for the proper maintenance, repair and replacement of properties." Management Authority ¶ 12.1. And the Manager "shall obtain all necessary insurance for the [Property] and keep them in force by timely payments and by the filing and processing of claims arising from time to time." *Id.* ¶ 13.1.

22. Fourth, the Manager must separately account for and maintain the funds of the Company, Equity Owner Members, and Manager, and in doing so, "[t]he Company's funds may not be commingled with the funds of any Manager or Member." Operating Agreement ¶ 10.05.

23. Fifth, Plaintiffs, as Equity Owner Members, are entitled to information and accounting regarding the Company from the Manager under the Company's governing documents and Colorado law. For instance, Plaintiffs are permitted to seek an "inspection and copying" of the Company's books and records upon written request to the Manager. Operating Agreement ¶ 10.01; *see also* C.R.S. § 7-80-408. In addition, the Manager must periodically provide Plaintiffs with certain reports as set forth in the Company's governing documents, including tax returns and a financial report (including a balance sheet and profit/loss statement) no later than "the 90th day following the end of each fiscal year," and a detailed budget for the year no "less than 30 days prior to the beginning of the ensuing fiscal year." *Id.* ¶ 10.02; Management Authority ¶ 11.2.

24. Lastly, all of the Manager's duties and obligations under the Operating Agreement must be exercised consistent with the Manager's obligation of good faith and fair dealing, which cannot be waived. *See* C.R.S. § 7-80-108(2)(d).

C. **The Manager Refuses to Provide Any Information to Plaintiffs in an Effort to Conceal Its Gross Mismanagement of the Company.**

25. Plaintiffs have fully performed their obligations under the Subscription Agreements, Operating Agreement, and other governing documents. Among other things, Plaintiffs executed subscription agreements with the Company, tendered the initial capital contributions and/or funds required to acquire membership interests in the Company, and timely paid their portion of the Quarterly Shared Expenses each quarter since becoming Equity Owner Members.

26. Since the Company acquired the Property in or around October 2018, the Manager has proven woefully inept or unwilling to properly manage the Company or provide the information it is required to furnish to Plaintiffs.

27. Since at least as early as November 2019, the Manager has failed or refused to provide information concerning the Company to Plaintiffs. For example, the Manager has failed to provide Plaintiffs with the 2018 and 2019 annual reports required under Paragraph 10.02 of the Operating Agreement. Such reports were due—without the need for any request from Plaintiffs—no later than "the 90th day following the end of each fiscal year." Operating Agreement ¶ 10.02. To date, however, the Manager has not provided either of these annual reports. Likewise, the Manager has also failed to provide Plaintiffs with a detailed annual budget for 2019, which is due—without the need for any request from Plaintiffs—no "less than 30 days prior to the beginning of the ensuing fiscal year." Management Authority ¶ 11.2.

28. In addition, Plaintiffs have submitted a number of written requests for information to the Manager, including without limitation:

   a. Written requests on various dates starting as early as November 2019, from Plaintiffs to the Manager's representatives, Rich Keith and Tommy Robinson, requesting information concerning the Property, expenses, and other financial information;

   b. A written request on April 29, 2020 from Plaintiffs to the Manager's representatives, Rich Keith and Tommy Robinson, requesting the Company's bank statements for December 2019 and January 2020 as proof the Manager has not commingled funds in violation of the Operating Agreement ¶ 10.05;

   c. A written request on April 30, 2020 from Plaintiffs to the Manager's representatives, Rich Keith and Tommy Robinson, requesting the name and address

of all members of the Company as required under the Operating Agreement ¶ 10.01(d);

d. A written request on May 1, 2020 from Plaintiffs to the Manager's representatives, Rich Keith and Tommy Robinson, requesting the reports for fiscal years 2018 and 2019 as required under the Operating Agreement ¶ 10.02;

29. To date, the Manager has failed to supply any of the above-referenced documents or information requested by Plaintiffs.

30. Despite the Manager's obstruction of Plaintiffs' efforts to obtain information regarding the Property or Company, Plaintiffs independently discovered that the Manager has not been paying expenses or taxes at the Property as they become due. Indeed, the Company is delinquent in paying at least $36,000 in property taxes owed on the Property for fiscal year 2019. The Manager has also failed to timely or fully pay expenses owed to Timbers, which has caused the Company to incur a substantial unpaid debt owed to Timbers. Through April 2020, the Company's balance of unpaid expenses owed to Timbers is over $77,000.

31. By allowing this excessive balance and debt with Timbers to accrue, the Manager have harmed Plaintiffs and the Company's relationship with Timbers and Plaintiffs' use of Timbers' amenities. As just one example, Timbers would not allow Plaintiffs to use the Timbers Reciprocity Program. When Plaintiffs asked why, Timbers told them that one of the restrictions to utilizing the Program is being current on expenses, which the Manager had failed, and continues to fail, to pay.

32. When Plaintiffs confronted the Manager about the unpaid expenses and taxes, the Manager attempted to deceive Plaintiffs with misinformation. For example, on April 27, 2020, the

Manager's representative, Rich Keith, wrote in an email to Plaintiffs that there was a credit of $51,204 "being applied to the [unpaid] balance" of expenses owed on the Property. But when Plaintiffs inquired with Timbers about Mr. Keith's representation, they were informed that the $51,204 "credit" referenced in Mr. Keith's email is simply the Manager's projection of future rental income from the Property for fiscal year 2020. In other words, the Company does not have any "credit" to apply to the substantial unpaid debt and taxes that the Manager has allowed to accrue on the Property. Rather, the Manager hopes that future rental income from fiscal year 2020 will reduce the substantial unpaid balance that has accrued. However, the Manager's projection that the Property will generate $51,204 of rental income in 2020 is highly unlikely given the restrictions on travel from COVID-19 and the existing dates in which the Property is already reserved by Equity Owner Members. And even if the Manager's projections were accurate—which they are not—this would still not be enough to pay off the current balance of unpaid expenses and taxes, which will only increase as additional expenses and taxes accrue in 2020.

33. The Manager's failure to pay expenses and taxes on the Property also demonstrates that the Manager has not been billing other Equity Owner Members for their portion of the Quarterly Shared Expenses. Indeed, Plaintiffs and one other Equity Owner Member, who collectively represent 45.83% of the membership interests of the Company, have timely paid their shares of the Quarterly Shared Expenses during each quarter. That indicates that the shortfall in expenses owed to Timbers is the result of the Manager's failure to collect Quarterly Shared Expenses from the other Equity Owner Members, who collectively represent the other 54.167% of the membership interests in the Company (the "<u>Defaulting Equity Owners</u>"). After all, if everyone timely paid their shares of the Quarterly Shared Expenses (as 45.83% of the Equity

Owner Members have), the Manager should have no problem paying the expenses owed on the Property as they come due. Yet, even with the rental income that the Property has generated since 2018, the Manager apparently lacks funds to pay the substantial balance of expenses and taxes owed on the Property.

34. Furthermore, at least two of the Defaulting Equity Owners are directors on the Manager's Board of Directors. By failing to collect Shared Expenses from these Defaulting Equity Owners, the Manager is permitting its own directors to benefit from the pool of rental income that the Property has generated without requiring them to carry their share of the expenses that the Operating Agreement expressly requires them to pay. This unfairly and disproportionately harms Plaintiffs, who have timely paid their part of the Quarterly Shared Expenses while the Defaulting Equity Owners have relied entirely on the pooled rental income—including Plaintiffs' share therein—to offset the payments they owe towards the Quarterly Shared Expenses.

35. Given the failure of the Defaulting Equity Owners to pay their share of the Quarterly Shared Expenses for at least six months, Plaintiffs sent a letter to the Manager on May 7, 2020 notifying the Manager that Plaintiffs intended to exercise their rights to "elect to make additional capital contributions to the Company" pursuant to Paragraph 5.03(b) of the Operating Agreement. As such, Plaintiffs demanded that the Manager "redeem the membership interests of the [D]efaulting Equity Owner[s]" at a "redemption price…equal to fifty percent (50%) of the then Unreturned Capital Contribution[s]" of the Defaulting Equity Owners. Operating Agreement ¶ 5.03(b). Plaintiffs further directed the Manager to provide a calculation of the precise redemption price of the Defaulting Equity Owners' membership interests and schedule a closing to consummate the transactions.

36. In their May 7 letter, Plaintiffs also requested that the Manager confirm in writing by no later than May 13, 2020 that it would comply with its obligations and enforce Plaintiffs' rights under Paragraph 5.03(b) of the Operating Agreement. In the event the Manager failed to provide such written confirmation, Plaintiffs notified the Manager that they intended to pursue all rights and remedies available to them under the Operating Agreement and applicable law.

37. On May 13, 2020, the Manager sent a letter responding to Plaintiffs' May 7 letter. The Manager conceded that the Defaulting Equity Owners had failed to pay their portion of the Shared Expenses. Yet, the Manager claimed that the Defaulting Equity Owners had no obligation to pay such Shared Expenses based on an apparent oral agreement between the Manager and the Defaulting Equity Owners that the Company would pay their Shared Expenses. This supposed agreement was never disclosed to Plaintiffs, directly conflicts with the express language of the Operating Agreement, and is not enforceable under the Operating Agreement or Colorado law. The Manager even acknowledged the purported agreement violates the Operating Agreement, but it claimed it would be amending the Operating Agreement to relieve the Defaulting Equity Owners of their obligations to pay Shared Expenses, without providing the same benefit to Plaintiffs. In any event, the Manager refused Plaintiffs' request to redeem the Defaulting Equity Owners' membership interests pursuant to Paragraph 5.03(b) of the Operating Agreement, and it denied that Plaintiffs have any such redemption rights.

38. The Manager's foregoing acts and omissions have deprived Plaintiffs of their rights under the relevant Company agreements and Colorado law. Moreover, the Manager has endangered the Company and Plaintiffs' interests therein by, among other things, failing to collect amounts expressly and unambiguously owed to the Company by the Defaulting Equity Owners,

encumbering the Property with substantial debts and unpaid taxes, and damaging the Company's relationship and reputation with Timbers.

39. Absent relief from the Court as further requested below, the Manager is likely to cause further and irreparable harm to Plaintiffs' interests in the Company and Property, including loss of future rentals that are difficult if not impossible to calculate, loss of reputation, and loss or damage to real property for which there is no adequate remedy at law.

## CAUSES OF ACTION

### Count I: Breach of Fiduciary Duty

40. Plaintiffs incorporate by reference the allegations set forth in all preceding and below paragraphs as if fully set forth herein.

41. A fiduciary relationship exists and has existed between Plaintiffs and the Manager at all relevant times in this case, including throughout the duration of the Manager's wrongful conduct at issue. That fiduciary relationship imposes on the Manager a number of fiduciary duties that it owes to Plaintiffs and the Company, including without limitation the duty to account, the duty to provide timely and accurate information, the duty of care, the duties to act competently and diligently in relation to the Company's business, the duty of loyalty, and the duty to refrain from competing with the Company.

42. The Manager has breached and continues to breach its fiduciary duties owed to Plaintiffs and the Company. As further described above, these breaches include without limitation failing to provide timely or accurate information to Plaintiffs; failing to supply an accounting or the requisite reports to Plaintiffs; failing to competently or diligently manage the Company and Property; failing to collect the Quarterly Shared Expenses from the Defaulting Equity Owners;

failing to timely pay expenses and taxes on the Property; allowing unpaid debts and taxes to accrue on the Property; self-dealing and favoring those Defaulting Equity Owners who are directors of the Manager by failing to collect Quarterly Shared Expenses from such directors while applying the pooled rental income to such directors' share of the Quarterly Shared Expenses; and failing to honor Plaintiffs' redemption rights under the Operating Agreement.

43. As a proximate result of the foregoing breaches, Plaintiffs have suffered and continue to suffer damages in an amount to be determined at trial. In addition to recover of such damages, Plaintiffs seek the requests for relief further outlined below, including an accounting and/or inspection of the Company's books and records, removal of the Manager as the managing member of the Company, specific performance, declaratory relief, reasonable and necessary attorney's fees, and all other equitable relief to which Plaintiffs may be entitled.

**Count II: Breach of Contract**

44. Plaintiffs incorporate by reference the allegations set forth in all preceding and below paragraphs as if fully set forth herein.

45. Plaintiffs and the Manager entered into valid and enforceable contracts, including the Operating Agreement and the Management Authority Policy.

46. Plaintiffs fully and/or substantially performed their obligations under these agreements with the Manager, as further described in paragraphs above.

47. The Manager has breached and continues to breach its obligations under its agreements with Plaintiffs. As further described above, the Manager's breaches include without limitation failing to provide reports and information required under the Operating Agreement and Management Authority policy; failing to collect the Quarterly Shared Expenses from the

Defaulting Equity Owners; failing to timely pay expenses and taxes on the Property; allowing unpaid debts and taxes to accrue on the Property; and failing to redeem the Defaulting Equity Owners' membership interests in accordance with Paragraph 5.03(b) of the Operating Agreement.

48. As a proximate result of the foregoing breaches, Plaintiffs have suffered and continue to suffer damages in an amount to be determined at trial. In addition to recover of such damages, Plaintiffs seek the requests for relief further outlined below, including an accounting and/or inspection of the Company's books and records, removal of the Manager as the managing member of the Company, specific performance, declaratory relief, reasonable and necessary attorney's fees, and all other equitable relief to which Plaintiffs may be entitled.

### Count III: Breach of Good Faith and Fair Dealing

49. Plaintiffs incorporate by reference the allegations set forth in all preceding and below paragraphs as if fully set forth herein.

50. Plaintiffs and the Manager entered into valid and enforceable contracts, including the Operating Agreement and the Management Authority policy. Under Colorado law, the Manager owes Plaintiffs a contractual duty of good faith and fair dealing in discharges its contractual obligations under the parties' contracts.

51. Plaintiffs fully and/or substantially performed their obligations under these agreements with the Manager, as further described in paragraphs above.

52. The Manager has breached and continues to breach its contractual duties of good faith and fair dealing owed to Plaintiffs. As further described above, the Manager's breaches include without limitation failing to act in good faith and fair dealing in furnishing Plaintiffs with information regarding the Company and/or Property; failing to collect the Quarterly Shared

Expenses from the Defaulting Equity Owners; causing Plaintiffs to carry a disproportionate share of the Company's expenses, while providing the Default Equity Owners a disproportionate benefit from the pooled rental income; failing to timely pay expenses and taxes on the Property; allowing unpaid debts and taxes to accrue on the Property; and failing to honor Plaintiffs' rights to redeem the Defaulting Equity Owners' membership interests in accordance with Paragraph 5.03(b) of the Operating Agreement.

53. As a proximate result of the foregoing breaches, Plaintiffs have suffered and continue to suffer damages in an amount to be determined at trial. In addition to recover of such damages, Plaintiffs seek the requests for relief further outlined below, including an accounting and/or inspection of the Company's books and records, removal of the Manager as the managing member of the Company, specific performance, declaratory relief, reasonable and necessary attorney's fees, and all other equitable relief to which Plaintiffs may be entitled.

### Count IV: Declaratory Judgment

54. Plaintiffs incorporate by reference the allegations set forth in all preceding and below paragraphs as if fully set forth herein.

55. Plaintiffs have alleged an actual controversy between them and the Manager regarding the rights and obligations under the Operating Agreement. Plaintiffs request a judicial declaration, under 28 U.S.C. § 2201 that the parties have the following rights and obligations under the Operating Agreement:

    a. Plaintiffs timely and properly elected to make additional capital contributions to the Company pursuant to Paragraph 5.03(b) of the Operating Agreement;

      b.      The Manager on behalf of the Company is obligated to redeem the membership interests of the Defaulting Equity Owners at a redemption price equal to 50% of the Unreturned Capital Contributions of the Defaulting Equity Owners as of May 7, 2020; and

      c.      Cause exists for the removal of the Manager as the managing member of the Company pursuant to Paragraph 6.09 of the Operating Agreement.

56. This Court may declare the rights and other legal relations of any interested party seeking declaratory judgment, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of final judgment or decree. 28 U.S.C. § 2201(a). Plaintiffs request a judicial decree as detailed in the foregoing paragraph. Plaintiffs further request their reasonable attorney's fees incurred in pursuing this action.

## REQUESTS FOR RELIEF

57. Plaintiffs incorporate by reference the allegations set forth in all preceding and below paragraphs as if fully set forth herein.

58. In addition to damages, Plaintiffs request certain contractual, statutory, equitable, and other relief in connection with their causes of action herein, including the following.

59. **Accounting/Inspection of Company Books & Records:** As detailed above, Plaintiffs have repeatedly sent written requests to the Manager for documents and information concerning the Company and/or Property, which the Manager has consistently failed to provide. Accordingly, Plaintiffs respectfully request that the Court order the Manager to provide an accounting and all other information required under the applicable law and agreements, including without limitation under the Operating Agreement ¶¶ 10.01, 10.02, 10.05, the Management

Authority policy ¶¶ 11.1 & 11.2, C.S.R. § 7-80-408, and all other applicable statutory and common law in Colorado.

60. **Removal of Manager**: Pursuant to Paragraph 6.09 of the Operating Agreement, the Manager may be removed for cause as found by a court of competent jurisdiction. Cause for removal of the Manager "is defined as a failure to meet the expectations of the Equity Owners as it relates to maintaining the property to a first-class level and operating the business affairs of [the Company] to a level that meets or exceeds Equity Owners expectations." Operating Agreement ¶ 6.09. As detailed above, cause exists in this case for the removal of the Manager, who has utterly and grossly failed to manage the Property to a level that meets the Plaintiffs' expectations. All other conditions precedent to such removal have or will be performed or are excused or waived. The Court, therefore, should remove the Manager as the managing member of the Company pursuant to the Operating Agreement and all applicable statutory and common law powers of removal.

61. **Specific Performance**: Plaintiffs seek specific performance of the Manager's obligations under the Operating Agreement and Management Authority policy, including without limitation under Paragraph 5.03(b) of the Operating Agreement. That provision is a valid and enforceable contract that expressly and unambiguously gives Plaintiffs the right to elect to make additional capital contributions towards the redemption of an Equity Owner's membership interest in the event such Owner fails to pay its share of the Quarterly Shared Expenses within six months of such expenses coming due. As detailed above, after the Defaulting Equity Owners failed to pay their Quarterly Shared Expenses within six months of such Expenses coming due, Plaintiffs tendered performance and/or notified the Manager of their intent to tender performance and that

they were ready, willing, and able to perform. Despite acknowledging that the Defaulting Equity Owners have failed to pay their portion of the Shared Expenses since the inception of the Company, the Manager refused to honor Plaintiffs' rights under Paragraph 5.03(b) of the Operating Agreement or redeem the Defaulting Equity Owners' membership interests in accordance therewith to the detriment of Plaintiffs. Absent an order or judgment requiring the Manager to perform under Paragraph 5.03(b) of the Operating Agreement, Plaintiffs will continue to suffer irreparable harm in the loss of the right to redeem the Defaulting Equity Owners' membership interests, which relate to a unique piece of real property held by the Company for the use and benefit of the Equity Owners.

62.  **Attorney's Fees and Costs**: Finally, Plaintiffs are also entitled to recover their reasonable and necessary attorney's fees and costs under the applicable agreements and/or legal authorities.

## CONDITIONS PRECEDENT

63.  All conditions precedent to Plaintiffs' claims for relief have been performed, have occurred, or are excused or waived.

## JURY DEMAND

64.  Plaintiffs hereby demand a trial by jury on any contested issues of material fact. Plaintiffs tender the requisite jury fee to the Clerk of the Court.

## PRAYER FOR RELIEF

Plaintiffs prays for judgment from this Court as follows:

a.  actual, consequential, expectation, and/or restitution damages;

b.  declaratory relief as detailed above;

    c.    an accounting from Defendant and/or inspection of the Company's books and records;

    d.    removal of Defendant as the managing member of the Company;

    e.    specific performance of Defendant's obligations under the Operating Agreement, including without limitation under Paragraph 5.03(b) of the Operating Agreement;

    f.    reasonable and necessary attorneys' fees and costs;

    g.    pre- and post-judgment interest; and

    h.    all other relief that this Court finds just or equitable.

DATED: May 19, 2020

Respectfully submitted,

*/s/ Edward Jason Dennis*
Edward Jason Dennis
Texas Bar No. 24045776
jdennis@lynnllp.com
Patrick Disbennett
Texas Bar No. 24094629
pdisbennett@lynnllp.com
Lynn Pinker Hurst & Schwegmann, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
214-981-3837 – Direct
214-981-3839 – Fax

***Counsel for Plaintiffs***